IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **VISION WARRIORS CHURCH, INC.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION** |
| | ) | |
| **vs.** | ) | |
| | ) | **JURY DEMAND** |
| **CHEROKEE COUNTY BOARD OF COMMISSIONERS, and HARRY JOHNSTON, STEVE WEST, RAY GUNNIN, BENNY CARTER, COREY RAGSDALE, both individually and in their official capacities as members of the CHEROKEE COUNTY BOARD OF COMMISSIONERS,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## COMPLAINT

### NATURE OF ACTION

1.     Vision Warriors Church, Inc. is a faith-based nonprofit organization.

Plaintiff brings this action for declaratory and injunctive relief and also seeks

compensatory damages based on the Defendants' deliberate and purposeful

deprivation of Plaintiff's rights under the United States Constitution, the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. ("FHA"), the Americans With Disabilities Act, 42 U.S.C. § 12132, *et seq*. ("ADA") and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq*. ("RLUIPA").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over all federal claims in the Complaint arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. 3601 *et seq*., and 42 U.S.C. 2000cc *et seq*., which confers original jurisdiction on United States Courts in suits to redress the deprivation of rights, privileges, and immunities, as stated herein. This Court has jurisdiction over the request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 3615 and 12133, and Rule 57 of the Federal Rules of Civil Procedure

3.    Venue lies in this District pursuant to 28 U.S.C. § 1391. Each Defendant and the Plaintiff are located in this District. All events giving rise to this action occurred in this District.

## PARTIES

4.     Plaintiff, Vision Warriors Church, Inc. (hereinafter "Vision Warriors"), is a Georgia non-profit corporation with IRC Section 510(c)(3) recognition, and operates as a faith-based ministry for men recovering from addiction.

5.     Defendant, Cherokee County, is a municipal corporation, incorporated, legal subdivision of the State of Georgia, created and existing by virtue of the Constitution and laws of Georgia, and is empowered by the State to act through its governing body, its officials, employees and official bodies. The Defendant is a recipient of federal funds.

6.     Defendant Harry Johnston is the Chairman of the Board of Commissioners (hereinafter "Board"), and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

7.     Defendant Steven West serves on the Board and is the Commissioner for District 1 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

8.      Defendant Ray Gunnin serves on the Board and is the Commissioner for District 2 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

9.      Defendant Benny Carter serves on the Board and is the Commissioner for District 3 and is responsible for the administration and enforcement of the zoning code, and is sued in individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

10.     Defendant Corey Ragsdale serves on the Board and is the Commissioner for District 4 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

## STATEMENT OF FACTS

11.     Vision Warriors is a non-profit ministry that seeks to provide a faith-based community for men recovering from addiction that focuses on accountability and transparency in an effort to help men to be better Disciples of Christ, fathers, husbands, leaders and friends. In fulfillment of this mission, Vision Warriors

4

provides support services to men striving to overcome addiction through a residential program, weekly services and faith-based meetings.

12.    Kirk Driskell is the founder of Vision Warriors and has been working with men in recovery for more than twenty-four years.

13.    As Vision Warriors has explained to the County on numerous occasions, Vision Warriors is neither a detox facility, nor a facility for court-ordered residents.

14.    Vision Warriors has been operating for more than seven (7) years to help men break free from the destructive cycle of addiction. In that time, Vision Warriors has hosted over 500 recovery meetings, gatherings and bible studies and has help nearly 200 men find job placement and maintain nearly a 100% employment rate.

15.    Vision Warriors is certified by the Georgia Association for Recovery Residents (GARR). GARR is a program that seeks "to create, monitor, evaluate and improve standards and measures of quality for recovery residences in Georgia." GARR is committed to establishing quality standards to provide the most effective services and recovery care to meet the expanding needs its members.

16.    Vision Warriors and GARR affirm the necessity of a continuum of care to adequately address the total needs of those struggling to overcome addiction for the long-term and maintain sobriety. For many, a short-term or long-term residential program is an integral and essential part of that care.

17.    Most of the residents and members receiving help from Vision Warriors come directly from short or long term treatment facilities. Long-term sobriety is greatly enhanced when coupled with after care and the type of communal living offered by Vision Warriors.

18.    On December 13, 2017, Vision Warriors purchased approximately 6.491 acres, identified in the records of Defendant Cherokee County as Tax Map 02N04, Parcels 314 & 318, commonly known as 1709 Old Country Place, Woodstock, Georgia 30188 ("the Property").  The purchase price of the Property was for $750,000.00.

19.    Approximately 5.348 acres of the Property is zoned to the R-80 (Residential) zoning district and the northernmost 1.143 acres of the Property is zoned to the R-20 (Residential) zoning district.

20.    The Property, previously owned by Tom and Jewel Young, was used as a church and a residence and retreat for missionaries and families in need, known

as Happy Acres Mission Transit Center ("Happy Acres"), from 1982 until the property was acquired by Vision Warriors in December of 2017.

21.    Happy Acres utilized and operated on the Property the following with the Defendant County's knowledge and zoning approval: (1) the Young's personal residence which also consisted of an efficiency apartment on the lower level, (2) a worship/assembly hall, (3) dormitories with kitchen facilities, (4) an auto repair shop, (5) a woodworking shop and warehouse, and (6) a storage building.

22.    The Youngs, through Happy Acres ministry, housed missionaries in their personal residence. The worship/assembly hall and dormitory were also used to house missionaries and their families and as a place for classes and worship. The auto repair shop was used by Mr. Young to make vehicle repairs, and to buy and sell vehicles to generate revenue to support the Happy Acres ministry. The warehouse building was used to store donated goods, to ship materials, and to manufacture wood crates - additional means for generating revenue to support the Happy Acres ministry.

23.    As Jewel Young attests in an affidavit furnished to Defendant County, the number of missionaries who stayed at Happy Acres at any given time varied over

the years. On average, four families stayed on the Property at a time. Some months, however, Happy Acres hosted up to six families on the Property.

24.    Happy Acres also hosted retreats and conferences, during which anywhere between thirty and fifty people would reside on the Property.

25.    The church and dormitory building contains seven rooms, plus a bunk room and three efficiency apartments.

26.    Happy Acres did not charge rent to the missionaries who stayed on the Property, but did request donations from them and others to help defray operating costs.

27.    In 2017, and in preparation for selling the Property to an organization with a similar use in mind, Jewel Young and her son, Tori Young, sought zoning confirmation from then-Zoning Administrator, Vicki Taylor Lee, that a similar use by the purchaser of the Property would be permitted. In a letter dated February 6, 2017 and titled, "Certification of Zoning for property located at 1709 Old Country Place, Woodstock, GA PL2017-050," Zoning Administrator Lee asserts,

> *There appears to be four (4) buildings on the parcel, a primary home, a detached garage, a dormitory and a chapel. As a legal non-conforming use, you may continue to house guests in the dormitory for short periods of time. You cannot expand the use to something different or increase the number of people served.*

28.    One month later, on or about March 8, 2017, Zoning Administrator Lee issued a more detailed letter identically titled, "Certification of Zoning for property located at 1709 Old Country Place, Woodstock, GA PL2017-050," and acknowledged the previously existing warehouse and attached a list of temporary shelters and uses classified under NAISC Code No. 624221.

29.    On July 19, 2017, Tori Young (son of Jewel and Tom Young) and Kirk Driskell of Vision Warriors met with Zoning Administrator Lee and one other county employee to discuss Vision Warriors' proposed acquisition of the property and to confirm, once again, that its proposed use as a temporary home for men recovering from drug and alcohol addiction would be permitted. During this meeting, Zoning Administrator Lee watched the videos available on Vision Warriors' website.

30.    Following their July 19, 2017 meeting, on July 31, 2017 and August 4, 2017, Tori Young exchanged emails with Zoning Administrator Lee to obtain written confirmation that Vision Warriors' intended use – *i.e.* to house men (not families and/or only women) recovering from drug and alcohol addiction – is

consistent with Zoning Administrator Lee's earlier Certification of Zoning letter issued on March 8, 2017 approving a non-conforming use.

31.   In this email, Tori Young specifically noted that Vision Warriors is "geared around men and this (the NAISC Codes referenced in the March 8, 2017 letter) references only women related use. Could it be more specific to Vision Warriors?"

32.   To this, Administrator Lee responded, "It also says homeless shelters without gender. I am the interpreter of land use and I assure you this meets Vision Warriors use."

33.   Section 14.1 of the Zoning Ordinance provides that, "[e]xcept as otherwise provided in these regulations the Zoning Administrator shall administer, interpret and enforce this Ordinance."

34.   On November 22, 2017, Kirk Driskell contacted Administrator Lee directly to inform her that Vision Warriors would be purchasing the Property and inquired what would need to be done by Vision Warriors to obtain a business license.

35.   On November 22, 2017, Administrator Lee responded to Mr. Driskell's email and informed him he is "good to go." She explained that "[w]hat will happen first is a Tenant Occupancy Change were [sic] the Fire Marshall and Building

Inspector come out to verify the required life-safety items." She concluded her email with "[b]est wishes for your endeavor."

36.    When each of these certifications were issued to Happy Acres and Vision Warriors, Administrator Lee had authority to interpret the Cherokee County Zoning Ordinance. The latter correspondence of November 2017, affirms that this determination was made specifically for Vision Warriors to assume operation of its ministry on the Property.

37.     Based on the assurances provided by Zoning Administrator Lee and the Certification of Zoning Approval, on December 13, 2017, Vision Warriors purchased the Property.

38.    Vision Warriors immediately began using the Property in the same manner as Happy Acres and for which building permits and zoning approval had lawfully been obtained as follows:

- Dormitory/Sanctuary: Used to house residents, prepare and provide meals to residents and supporters and host regular religious services and faith-based meetings
- Car Shop: A free-standing building and fully operational care repair facility which provides jobs and funding to support the ministry
- Woodshop: Used to create products, hone skills and provide revenue to support the ministry.
- Warehouse/Logistics Center: Used to accept, store and distribute donations provided to the ministry; run export/import business.

- Front Parcel Home: Used as personal residence and to host members and staff.

39.    Following Vision Warriors' acquisition of the Property, Mrs. Jewel Young continued to reside on the Property as she had for more than forty years prior.

40.    Vision Warriors currently hosts services on the Property each week on Tuesdays and Thursdays. Approximately 40-80 people attend the services. For the protection of the men and their anonymity, notice of these gatherings are not published or advertised to the public.

41.    Vision Warriors houses between approximately twenty and thirty residents on the Property. These residents include family and/or married and single men – all who are struggling to overcome drug addiction for the long-term and all who desire to restore family relationships and their relationship with the Lord.

42.    Vision Warriors does not charge rent to its residents and resident members are not required to sign a lease. It does, however, ask members to contribute $600 monthly to help the ministry offset all of its costs. A resident is not turned away due to inability to pay.

43.    Vision Warriors operates with the strong belief that requiring resident members to contribute something toward room and board encourages a strong work ethic and a sense of accomplishment. Financial stability is crucial to lasting recovery.

44.    All residents are required to adhere to house rules and guidelines outlined in a membership agreement. Most residents stay an average of six (6) months.

45.    In addition to the residence and dormitory/sanctuary, Vision Warriors utilizes the pre-existing car and wood shop to provide a vocational training ministry for its residents which, in turn, sets its members up for success and provides employment opportunities.

46.    Every single activity on the Property is related to and operated with the goal of helping members build confidence in their roles as men working for God and to maintain individual financial stability.

47.    Visions Warriors' use of the Property is practically identical to that of Happy Acres, which was approved by the County year after year. The only difference is the type of residents served by Vision Warriors – *i.e.* disabled individuals struggling to overcome addition.

48.     At the time Vision Warriors purchased the Property and learned that it would need an occupancy permit, a dormitory was an "open use" in all residential zoned areas – a use permitted by right without additional specialized requirements.

49.     In April 2018, Vision Warriors received a visit from the Cherokee County Fire Marshall who informed Kirk Driskell that he would need to obtain further documentation from the County. Vision Warriors contacted the County to obtain a Business License to operate on the Property and was instructed that it only needed to obtain a Tenant Occupancy Permit.

50.     In April 2018, Cherokee County amended its Zoning Ordinance to limit the operation of a dormitory by special use permit only in all residential zoning districts.

51.     A "special use" is permitted "upon compliance with Article 18.4 Special Use Permits of this Ordinance and the grant of a Special Use Permit by the Board of Commissioners."

52.     Prior to enactment of the amendment, Vision Warriors had been using the Property with zoning approval by Defendant County for more than four months and, thus, Vision Warriors' use of the Property should be considered a legal non-conforming use (i.e. "grandfathered use") and be allowed to continue.

53.     Section 13.3 of the Zoning Ordinance provides that "[t]he lawful use of any building, structures, land or sign existing at the time of the enactment or amendment of this Ordinance may be continued, even though such use does not conform with the provisions of this Ordinance. . ."

54.     On April 20, 2018, Vision Warriors obtained a Tenant Change Permit from Defendant County.

55.     On or about April 24, 2018, the Cherokee County notified Vision Warriors that a dormitory use may not be permitted as of right.

56.     Thereafter, Vision Warriors met with Fire Marshal, Chad Arp, Planning Director, Jeff Watkins and County Planner, Margaret Stallings, to discuss Vision Warriors' ministry and use of the Property. During the meeting, these County officials explained to Vision Warriors that neighbors had expressed opposition regarding the type of residents Vision Warriors ministers to.

57.     On May 9, 2018, and at the request of Defendant County officials, Vision Warriors provided a statement of its operations, as well as an *ante litem* notice.

58.     On May 23, 2018, neighbors circulated an email and a petition to neighbors with the subject line, "We all have a huge neighborhood problem!" The

email contained false information and unfounded concerns that Property values would decrease and children would be unsafe because of Vision Warriors' use of the Property.

59.    The email was circulated by Richard Jordan, a member of the Cherokee Citizens for Community Preservation, and contained the County's official seal on the email giving the appearance that the communication was one sanctioned by the County.

60.    Shortly thereafter, on May 30, 2018, Vision Warriors was asked by the County to discount some of these false claims.

61.    These same unfounded concerns have been expressed by neighbors on numerous occasions to Defendants and at public hearings involving or relating to Vision Warrior's zoning applications.

62.    Upon information and belief, Defendants sought to amend the zoning ordinance to remove dormitory and other accommodation housing uses as an "open use" in all residential areas following, and in response to, neighborhood opposition to Vision Warriors' ministry on the Property.

63.    On June 2, 2018, Vision Warriors provided supplemental information regarding its operations via email to Defendant County's attorney.

64.     On June 12, 2018, Defendants issued a letter via their counsel notifying Vision Warriors that it was "engaging in an unpermitted use of the property such that the Tenant Occupancy Change Permit was issued in error." The letter ordered Vision Warriors that "offending uses must be discontinued."

65.     The letter also communicated the Defendants' position that "the principal use of the property is a temporary shelter, which is prohibited in residential zoning districts. In addition, we have determined that the church is not being used as a church as alleged."

66.     On July 11, 2018, Vision Warriors filed an administrative appeal of this letter to the Board of Commissioners itself, pursuant to the requirements of the Cherokee County Zoning Ordinance.

67.     On or about July 11, 2018, and in the Memorandum in Support of Vision Warriors' appeal, Defendants were notified that Vision Warriors is an organization entitled to protection under the Fair Housing Act and Americans With Disabilities Act.

68.     On or about July 11, 2018, Defendants received fair warning that their continued attempts to interfere with Vision Warriors' previously approved use of the

Property violated Vision Warriors' constitutional rights and constituted violations of clearly established federal law.

69.    Under the Zoning Ordinance, a family is defined as "[a]n individual, or two or more persons related by blood, marriage, adoption or guardianship, or a group of not more than four unrelated persons, occupying a single dwelling unit. . . . The term 'family' does not include any organization or institutional group."

70.    Under the Zoning Ordinance, a "place of worship" is defined as "a permanent structure built for the purpose of accommodating a Religious Organization in its exercise of religious worship, prayer, and/or religious instruction."

71.    On November 6, 2018, the County Board of Commissioners held a work session to discuss Vision Warriors' appeal of the Zoning Administrator's decision to revoke Vision Warriors' zoning approval and tenancy occupancy permit and, upon request by Vision Warriors, decided to continue appeal proceedings until the two land use applications to be submitted by Vision Warriors were submitted and decided.

72.    On November 20, 2018, Vision Warriors submitted its two land use applications in an attempt to propose and obtain a reasonable accommodation to the

County's revocation of zoning approval and application of its zoning ordinances to deny Vision Warriors zoning approval.

73.    The first land use request was for a special use permit to allow a dormitory and religious institution, which if approved would allow all of Vision Warriors' above-referenced uses of the property without changing the underlying R-20 & R-80 zoning categories. The other request was for rezoning of the Property to the Office/Industrial District (OI) to allow for all of the above uses.

74.    Prior to this hearing, Defendants were, once again, warned that their actions in denying Vision Warriors' application for a special use permit and/or in the alternative, application for rezoning, would violate federal laws, including but not limited to the FHA, ADA and RLUIPA.

75.    On March 5, 2019, a public hearing was held by Defendant County's Planning Commission regarding Vision Warriors' zoning applications. The Planning Commission recommended denial of both requests.

76.    At this hearing, the current Zoning Manager of the County, Michael Chapman, presented information regarding the current zoning, surrounding uses, land use compliance and economic use of the Property.

77.    During his presentation, Mr. Chapman confirmed the Zoning Ordinance's descriptions of the R-80 and R-20 residentially-zoned areas in which the Property is located.

78.    Mr. Chapman confirmed that the existing roadways would accommodate any traffic generated by Vision Warriors' use of the Property.

79.    Mr. Chapman explained that the first parcel of the Property "is in the suburban growth area and future land uses envisioned in this area include residential, as well as semi-public and *institutional uses*." [emphasis added].

80.    Mr. Chapman explained that the second parcel is located in suburban growth and suburban living and is compatible with both commercial and residential development and that "future land uses in this character area are envisioned to be residential, recreational and parks, as well as semi-public and *institutional uses*." [emphasis added].

81.    At this hearing, approximately eleven (11) people signed up to speak in opposition to Vision Warriors' zoning applications. Several neighbors speaking in opposition again expressed unfounded concerns based solely upon the fact that Vision Warriors houses men in recovery from drug and alcohol addiction.

82.    During this meeting, no evidence was presented to support that Vision Warriors' more than fifteen (15) months use of the Property had disturbed any neighbors, created parking or traffic issues, and/ or was inconsistent with the residential use of the neighborhood.

83.    The Planning Commission specifically referenced and acknowledged the letters, emails and correspondence of opposition it had received from neighbors regarding Vision Warriors' proposed uses of the Property.

84.    On March 5, 2019, the Planning Commission voted to recommend denial of both land use applications.

85.    On April 16, 2019, Vision Warriors' applications for both a special use permit and for rezoning were heard by the Board of Commissioners.

86.    Prior the scheduled public meeting, Defendants were again warned that their actions in denying Vision Warriors' application for a special use permit and/or in the alternative, application for rezoning, would violate federal laws, including but not limited to the FHA, ADA and RLUIPA.

87.    On April 16, 2019, the Defendants voted to deny both of Vision Warriors' land use applications.

88.    Defendants' conduct has frustrated the mission of Vision Warriors and constitutes a threat of irreparable harm if Defendants are permitted to continue with their discriminatory conduct against Plaintiff.

## COUNT I
## Fair Housing Act
## (42 U.S.C. § 3604, *et seq*)

89.    All preceding paragraphs are incorporated by reference as if set forth fully herein.

90.    The Fair Housing Act guarantees fair housing to individuals with disabilities and makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).

91.    Plaintiff constitutes a person with a handicap under the Fair Housing Act, 42 U.S.C. § 3602(d), (h) and (i), and has suffered damages, economic loss and loss of civil rights as a result of Defendants' conduct.

92.    Plaintiff's use of the Property constitutes a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

93.     The Defendants violated Plaintiff's rights under the Fair Housing Act, by refusing to allow Plaintiff's continued use of the Property and enforcing zoning rules and policies in a discriminatory manner.

94.     The Defendants violated Plaintiff's rights under the Fair Housing Act by failing to make reasonable accommodations in the zoning code to afford the Plaintiff an equal opportunity to use and enjoy the Property.  In fact, the Defendants specifically modified the Cherokee County Zoning Ordinance for the purpose of denying Vision Warriors the ability to conduct its uses of the property, including without limitation, housing disabled persons of a protected class.

95.     The effect of Defendants' actions is to deny zoning approval to Plaintiff and deny needed housing to those receiving assistance and support from Plaintiff for recovery from alcohol and drug addiction.

**COUNT II**
**Violation of Americans With Disabilities Act**
**(42 U.S.C. § 12102, *et seq*)**

96.   Paragraphs 1 through 88 are incorporated by reference as if set forth fully herein.

97.     The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

98.     The Plaintiff is associated with and provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2) and is a covered entity.

99.     The Defendant Cherokee County is a public entity under 42 U.S.C. § 12131(1).

100.    42 U.S.C. § 12202 provides: "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [1] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

101.    The actions of the Defendants to revoke zoning approval and then deny zoning approval to Plaintiff violates Plaintiff's rights and those seeking its assistance

under the Americans With Disabilities Act, 42 U.S.C. §12132 *et seq.* and the regulations promulgated thereunder by, among other ways:

     a. Using land ordinances and methods of administering those ordinances for the purpose of subjecting Vision Warriors to discrimination on the basis of their handicap;

     b. denying housing and attempting to make housing unavailable to those seeking assistance from Plaintiff because of their disability;

     c. denying Plaintiff and its residents an equal opportunity to participate in the benefits of services, programs, or activities of a public entity.

**COUNT III**
**Violation of the Religious Land Use and Institutionalized Persons Act of 2000**
**"Substantial Burden on Religious Exercise"**
**(42 U.S.C. § 2000cc(a))**

102.   Paragraphs 1 through 88 are incorporated by reference as if set forth fully herein.

103.   The Defendants constitute a "government" pursuant to 42 U.S.C. § 2000cc-5(4)(A)(i),(ii).

104.   Vision Warriors constitutes a "religious assembly or institution" pursuant to 42 U.S.C. § 2000cc(a)(1).

105.   Defendants have deprived and continue to deprive Plaintiff of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000, by imposing and implementing land use regulations that place a substantial burden on Plaintiff's religious exercise without a compelling governmental interest.

**COUNT IV**
**Violation of the United States Constitution**
**Equal Protection: Fourteenth Amendment**
**(42 U.S.C. § 1983)**

106.   Paragraphs 1 through 88 are incorporated by reference as if set forth fully herein.

107.   Defendants acted under the color of state law in depriving Plaintiff of its constitutionally guaranteed right to equal protection under the Fourteenth Amendment to the United States Constitution.

108.   The individual Defendants' actions violated clearly established statutory and constitutional rights of which a reasonable person would have known.

109.   The repeated actions of Defendants have deprived and continue to deprive Plaintiff of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States, by discriminating against Plaintiff in its application of the laws, practices and policies.

110.   Defendants targeted Plaintiff because of the residents and people they provide assistance to – *i.e*. people suffering from a disability.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a)   A declaration that the Defendants' practice and policy of revoking Plaintiff's zoning approval and Tenant Occupancy Change permit is discriminatory, illegal and unconstitutional as violating the United States Constitution, the Fair Housing Act, the Americans With Disabilities Act, and the Religious Land Use and Institutionalized Persons Act of 2000;

(b)     A declaration that the Defendants' actions in denying the Plaintiff reasonable accommodations is illegal and unconstitutional as violating the Fair Housing Act, Americans With Disabilities Act, and the United States Constitution;

(d)     The Court grant preliminary and permanent injunctive relief preventing Defendants from illegally and unconstitutionally applying the County's laws, practices and policies to Plaintiff's use of the Property, including, but not limited to, enjoining Defendants from applying its laws, practices and policies in a manner that substantially burdens Plaintiff's religious exercise, or from applying those laws, practices and policies in a discriminatory manner, and otherwise enjoining Defendants from preventing Plaintiff's exercise of constitutional and statutory rights;

(e)     That Plaintiff have and recover compensatory damages in the amount of $300,000.00; together with any special damages arising out of the Defendants' conduct as described in the Complaint;

(f)     That Plaintiff have and recover nominal damages;

(g)     That Plaintiff have and recover attorney fees and costs as provided by federal statute;

(h)    Such other and further relief as this Court may deem just and appropriate.

## **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action of all issues so triable.

Respectfully submitted,

/s/ J. Ethan Underwood
J. Ethan Underwood
Georgia Bar No. 721901
Miles Hansford & Tallant, LLC
202 Tribble Gap Road, Suite 200
Cumming, Georgia 30040
Ph: 770-781-4100
eunderwood@mhtlegal.com

Abigail Southerland*
AMERICAN CENTER FOR LAW & JUSTICE
625 Bakers Bridge Ave, Suite 105-121
Franklin, TN 37067
Ph: (800) 296-4529
Fax: (615) 309-8832
asoutherland@aclj.org

Mark Goldfeder*
AMERICAN CENTER FOR LAW & JUSTICE
1323 Breezy Lane NE
Atlanta GA 30329
Ph: 917 301 8746
goldfed@gmail.com

**ATTORNEYS FOR PLAINTIFF**

*Pro hac vice application to be submitted